(79 South. 48)

DAVIES v. SIMPSON et al. (8 Div. 96.)

(Supreme Court of Alabama. April 11, 1918. On Rehearing, May 9, 1918.)

1. BILLS AND NOTES ☞366 — BONA FIDE PURCHASER — WIFE'S NOTE FOR HUSBAND'S DEBT.

Wife who joins with husband in executing note to secure husband's debt cannot assert invalidity thereof under Code 1907, § 4497, providing that wife shall not become surety of husband, where holder of note is a bona fide purchaser.

2. BILLS AND NOTES ☞358 — "BONA FIDE PURCHASER" — "VALUE" — PRE-EXISTING DEBT.

Under Code 1907, § 5007, subd. 3, requiring payment of value by one claiming as a bona fide purchaser, and section 4982, providing that a pre-existing debt constitutes value, and section 5012, providing that bona fide purchaser takes note free from defects of title of prior parties, a bank taking note as collateral for pre-existing debt is a "bona fide purchaser."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bona Fide Purchaser; Value.]

3. MORTGAGES ⊜→153—BONA FIDE PURCHAS-ER OF NOTE SECURED BY MORTGAGE.

A mortgage securing a note in the hands of a bona fide purchaser has the same protection from equitable defenses of maker as the note; the mortgage being a mere incident of the note.

4. EQUITY ⊜→153—BILL—CONSTRUCTION.

In construing allegations of bill in equity to determine whether a holder of note is alleged to be a bona fide purchaser thereof, the allegations will be construed most strongly against the pleader.

5. BILLS AND NOTES ⊜→464—PLEADING—DE-SCRIPTION OF INSTRUMENT — "PROMISSORY NOTE."

An allegation that a "promissory note" was assigned is sufficient allegation that the instrument assigned was an unconditional promise to pay another a certain sum of money at a special specified time (citing Words and Phrases, First and Second Series, Promissory Note).

6. CANCELLATION OF INSTRUMENTS ⊜→37(5)—PLEADING—HOLDER OF NOTE.

Where bill praying for cancellation of note refers to possible assignment of note from bank to some other person "who might claim to be an innocent purchaser thereof," the bill sufficiently alleges bank to be holder of the note.

7. BILLS AND NOTES ⊜→497(1)—PRESUMPTION —HOLDER IN DUE COURSE.

Under Code 1907, § 5007, defining holder in due course, and section 5014, making holder prima facie holder in due course, a bank alleged to be holder of a note is presumed to be a holder in due course.

8. CANCELLATION OF INSTRUMENTS ⊜→37(5)—PLEADING—HOLDER IN DUE COURSE.

Complainant seeking cancellation of note and alleging bank to be holder thereof must affirmatively plead notice to bank of the infirmity in note on which action is based; the bank alleged to be holder being presumptively a holder in due course taking note free from equitable defenses thereto.

9. BILLS AND NOTES ⊜→365(1) — RIGHTS OF HOLDER IN DUE COURSE.

A bank receiving a note from payee in the usual course of business, before maturity, for a valuable consideration, and without notice of any defect or infirmity, has an original right of action against maker exempt from all legal and equitable defenses to which it might have been subject before transfer.

10. HUSBAND AND WIFE ⊜→171(10) — MORTGAGE FOR HUSBAND'S DEBT — MARSHALING ASSETS.

Where wife joins with husband in executing note to secure husband's debt and gives mortgage on her land to secure note, she cannot compel a bona fide purchaser of note to marshal the assets of payee before foreclosing mortgage.

11. PRINCIPAL AND SURETY ⊜→169 — COMPELLING RECOURSE TO OTHER SECURITIES.

A surety cannot compel creditor to marshal assets of principal.

Appeal from Circuit Court, Morgan County; R. C. Brickell, Judge.

Action by Bessie H. Davies against E. L. Simpson and others. From an order sustaining demurrers to amended bill, plaintiff appeals. Affirmed.

G. O. Chenault, of Albany, for appellant. E. W. Godbey, of Decatur, for appellees.

McCLELLAN, J. [1, 2] The appellant, complainant, filed this bill against E. L. Simpson, the Tennessee Valley Bank, a corporation, and her husband, W. S. Davies. The court sustained demurrers to the amended bill; and the appeal is from that decree. The relief the complainant desires is the cancellation of a mortgage to Simpson on the real estate of the complainant; the contention being that the mortgage was given, in opposition to the statute (Code, § 4497), to secure the debt of the complainant's husband, W. S. Davies, to Simpson, which, with the several notes for this indebtedness, Simpson has assigned to the Tennessee Valley Bank as collateral for money loaned Simpson by the bank; but, if mistaken in this particular reason for relief, the complainant invokes the compulsory power of the court to restrain Simpson from disposing of or incumbering other properties owned by him that would be available to the bank, and should be availed of by the bank, to collect its debt from Simpson, to the end that the complainant's lands, described in the mortgage, may be exonerated from subjection to the satisfaction of Simpson's indebtedness to the bank, at least until Simpson's assets have been exhausted. It was decided in Scott v. Taul, 115 Ala. 529, 22 South. 447, that a bona fide purchaser of negotiable paper executed by a wife as comaker with her husband is protected against any defense by the wife predicated of the statute (Code, § 4497), on the theory that she was only a surety for the husband in respect of the indebtedness evidenced by the negotiable instrument so acquired. Whatever the reasons that might be given as reflecting upon the soundness of the stated conclusion in Scott v. Taul, the court is not disposed at this late day, after the statute has been re-enacted in the Code of 1907, to enter upon a reconsideration of the question there decided. Hence, if the respondent bank is a bona fide purchaser for value and without notice, before maturity, of the notes, secured by mortgage, executed to Simpson by complainant and her husband, and the notes are commercial paper, the complainant cannot, as against the bank, successfully assert the invalidity of the mortgage, even though it was given on her property to secure the debt of her husband only. Under Code 1907, §§ 4982, 5007, subd. 3, and section 5012, a holder otherwise in due course is a bona fide purchaser of negotiable paper for value notwithstanding he has taken the paper as collateral security for a pre-existing debt. Vogler v. Manson, 76 South. 117.[1] It results from the application of this rule of statute and decision to the averments of the bill, notwithstanding Simpson's debt to the bank was a pre-existing obligation when the bank acquired the notes, that the bank cannot be denied the protection usually accorded a bona fide purchaser because of the averred pre-existence of Simpson's debt to the bank.

[3-8] The real question presented for review with respect to the aspect of the amended bill bearing upon the objection taken by the

---

⊜→For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 200 Ala. 351.

demurrer that the bill's averments disclose the bank's status and relation to have been that of bona fide purchaser of the notes is this: Is the bank's status and relation that of bona fide purchaser of the notes the mortgage was an incident thereto (Thompson v. Maddux, 117 Ala. 468, 476, 23 South. 157); so executed by the complainant and her husband to Simpson? On the consideration of that inquiry the court must apply the familiar rule that the allegation of the pleading thus assailed must be construed most strongly against the pleader. The bill avers that the papers assigned are "promissory notes." Unless otherwise limited or defined, a promissory note is, at least prima facie, an unconditional promise to pay another a certain sum of money at a specified time. 6 Words and Phrases, 5676 et seq.; 3 Words and Phrases (2d Ed.), pp. 1261, 1262; Louisville Banking Co. v. Gray, 123 Ala. 251, 254, 26 South. 205, 82 Am. St. Rep. 120; McRae v. Raser, 9 Port. (Ala.) 124. In paragraph 6 of the original bill it is averred, as upon information and belief, that Simpson would undertake to have the mortgage in question foreclosed, or, regaining the notes from the bank, undertake to sell or negotiate them to some other person "who might claim to be an innocent purchaser thereof"; and the prayer invokes the power of the court to restrain Simpson "from negotiating or trading said notes or disposing of them in any way to any outside person, who might or could claim to be a bona fide holder of them in due course so as to bind complainant thereon." The amendment to the original bill subtracts nothing from the effect of the quoted averments. In the light of these averments, which must be subjected to the familiar rule of interpretation before restated, the court below was entirely justified in concluding that the notes in question were negotiable instruments, as such instruments are defined in the Uniform Negotiable Instruments Law. By express averment the bill shows that these notes were unconditional promises to pay sums certain to a specified person at stipulated times. Further observing the rule which requires the interpretation of the averments of the bill most strongly against the pleader, it must be ruled that the amended bill defines the status and relation of the bank to these notes to be that of a holder thereof, and that, in consequence, the prima facie presumption prevails that the bank was and is a holder in due course, meaning that the bank took the notes before maturity, in good faith, and without notice of any infirmities in the instruments or in the title of the negotiator. Code, §§ 5007, 5014; Sherrill v. Merchants' Bank, 195 Ala. 175, 70 South. 723. In this state of the averments and of the conclusions therefrom deduced, as stated, the complainant could only avoid the according to the bank of the protection due a bona fide purchaser of these instruments

by affirmatively pleading notice to the bank of the infirmity in the contract between the complainant and her husband and Simpson in consequence of section 4497 of the Code. Sherrill v. Bank, supra. There was therefore no error in sustaining the bank's demurrers assailing the bill for its insufficiency in the particular that it sought the cancellation of the mortgage on the ground that it was given on the complainant's property to secure the husband's debt.

[9-11] The other theory of the bill, erected upon the notion that, when Simpson assigned these notes to the bank as collateral security for his loan from the bank, the complainant or her property were placed in the posture and relation of surety, for Simpson as principal, to the bank as creditor, is entirely unsound. According the effect stated to the averments of the amended bill, the bank became a bona fide holder in due course, its right being complete and unassailable to the notes and mortgage; and the complainant was, so far as the bank was concerned, primarily liable, along with her comaker, the husband, as the contract evidenced by the notes and mortgage promised and provided. The unrestricted transfer of a negotiable instrument, before maturity, in the usual course of business, for a valuable consideration, and without notice, creates in the transferee an original and paramount right of action; and in the hands of such transferee the contract is exempt from all legal and equitable defenses to which it might have been subject before such transfer. Capital City Ins. Co. v. Quinn, 73 Ala. 558; Sherrill v. Bank, supra. A person is primarily liable on an instrument when by the terms thereof he is absolutely required to pay the same. Code, § 5139; Rouse v. Wooten, 140 N. C. 557, 558, 53 S. E. 430, 111 Am. St. Rep. 875, 6 Ann. Cas. 280; Crawford's Anno. Neg. Instr. Law, p. 4. The assignment of these notes to the bank did not constitute either the complainant or her property a surety in any such sense as to invest the complainant with any right to compel the bank to marshal the assets of Simpson to the exoneration of the complainant's property from subjection to the liability unqualifiedly imposed by the contract between Simpson and the complainant and her husband, which, free from infirmity, the bank acquired as a bona fide purchaser. The statute (Code, § 4497) has no possible effect to constitute any measure of priority with respect to the property of the wife when incumbered to secure the debt of the husband. Such a contract is void, unless it is represented by a negotiable instrument that has been acquired by a bona fide purchaser, in which event the contract is entirely free from the visitation of the invalidating effect of the statute (Code, § 4497). Scott v. Taul, supra. Even in cases of ordinary suretyship (not guaranty) the general rule is that the surety

cannot compel the creditor to exhaust the assets of the principal to the exoneration of the property or liability of the surety. The surety must, as is familiar, redeem his unqualified promise to pay the debt to the creditor before the surety can proceed against his principal or his principal's property. Skinner v. Barney, 19 Ala. 698, 701; Habil v. United States Fidelity Co., 142 Ala. 363, 366, 39 South. 54. The case of Elyton Land Co. v. Hood, 121 Ala. 373, 25 South. 745, and others in that line cited for the appellant are without bearing or influence in this connection. In the Hood Case there was an express promise by the subvendee, accepted by the vendor, to pay the debt of the vendee; a vital fact, among others, distinguishing that decision from the facts set forth in the amended bill in this cause.

From these considerations it results that no error affected the ruling of the court below in sustaining the demurrer noted in the assignments of error.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

On Rehearing.

McCLELLAN, J. The argument for rehearing has been carefully considered. The court remains satisfied with the conclusion attained. When due account is taken of the fact that the decision in Scott v. Taul, 115 Ala. 529, 22 South. 447, was correctly stated in Evans v. Faircloth, 165 Ala. 176, 179, 51 South. 785, 21 Ann. Cas. 1164, "based upon the principles of the commercial law with regard to negotiable instruments," there is no inharmony between that decision and any other delivered by this court requiring the consideration or application of the provisions of Code, § 4497. The construction put upon that statute in Scott v. Taul, supra, was decided upwards of 20 years ago; and the statute has been re-enacted with that construction upon it. Certainly this court would not now be justified in reading the re-enacted statute to an immediately different effect. 11 Nichie, Dig. Ala. Rep. p. 1114, citing numerous decisions.

Reference to the original opinion will disclose that the court, in construing the bill, original and as amended, did not indulge a presumption that the notes possessed all the qualities or characteristics essential to constitute a negotiable instrument; but, far differently, deduced the conclusion that they were negotiable instruments, possessing all their qualities or characteristics, from what appeared on the face of the pleading, under the influence and exaction of the applicable, familiar rule which requires, on hearing or demurrer, the pleading to be construed most strongly against the pleader.

The appellant is not related to the transaction as a surety to Simpson in his relation of debtor to the bank. The reasons for this conclusion are stated in the original opinion. The bill seeks the complete cancellation of the instruments. It does not invoke the powers of the court to ascertain and determine the extent to which the bank, as a bona fide purchaser for value and without notice, may be protected, and beyond that (the indebtedness of Simpson to the bank) the annullment of the notes and mortgage as securities for the husband's indebtedness to Simpson. That question is not presented, and hence is not decided.

The application for rehearing is denied.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.